ANDREW L. PACKARD (Bar No. 168690)
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, CA 94952
Telephone: (707) 763-7227
Facsimile: (415) 763-9227
E-mail: Andrew@packardlawoffices.com

Counsel for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

**FILED**

JAN - 6 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN AUTO WRECKERS, RICHARD L. PARKS,<br><br>Defendants. | Case No. 2:07-cv-00965-FCD-GGH<br><br>[PROPOSED] CONSENT AGREEMENT |

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("AGREEMENT") is entered into between the California Sportfishing Protection Alliance ("CSPA") and American Auto Wreckers ("AAW") and Richard L. Parks (AAW and Richard L. Parks will be referred to collectively as "Defendants"; all parties to this settlement will be referred to as the "SETTLING PARTIES"), with respect to the following facts and objectives:

### RECITALS

WHEREAS, CSPA is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement, and restoration of the rivers, creeks, and tributaries of the San Joaquin River and Sacramento-San Joaquin Delta. Bill Jennings is the Executive Director of CSPA and a member of CSPA;

WHEREAS, AAW is a business entity operating under the laws of the State of California that owns and operates an auto dismantling and parts facility located at 6128 Stockton Blvd., Sacramento, California (the "Facility"). The Facility is covered by State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereinafter, the "General Permit");

WHEREAS, Richard L. Parks is an individual and is the owner and operator of AAW;

WHEREAS, on or about February 16, 2007, CSPA provided Defendants with a Notice of Violation and Intent to File Suit ("60-Day Notice Letter") under the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365;

WHEREAS, on May 22, 2007, CSPA filed its Complaint in the United States District Court

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("AGREEMENT") is entered into between the California Sportfishing Protection Alliance ("CSPA") and American Auto Wreckers ("AAW") and Richard L. Parks (AAW and Richard L. Parks will be referred to collectively as "Defendants"; all parties to this settlement will be referred to as the "SETTLING PARTIES"), with respect to the following facts and objectives:

### RECITALS

WHEREAS, CSPA is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement, and restoration of the rivers, creeks, and tributaries of the San Joaquin River and Sacramento-San Joaquin Delta. Bill Jennings is the Executive Director of CSPA and a member of CSPA;

WHEREAS, AAW is a business entity operating under the laws of the State of California that owns and operates an auto dismantling and parts facility located at 6128 Stockton Blvd., Sacramento, California (the "Facility"). The Facility is covered by State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereinafter, the "General Permit");

WHEREAS, Richard L. Parks is an individual and is the owner and operator of AAW;

WHEREAS, on or about February 16, 2007, CSPA provided Defendants with a Notice of Violation and Intent to File Suit ("60-Day Notice Letter") under the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365;

WHEREAS, on May 22, 2007, CSPA filed its Complaint in the United States District Court

for the Eastern District of California against Defendants (*California Sportfishing Protection Alliance v. American Auto Wreckers et al.* Case No. 2:07-cv-00965-FCD-GGH);

WHEREAS, Defendants deny any and all of CSPA's claims in its 60-Day Notice Letter and Complaint;

WHEREAS, the SETTLING PARTIES, through their authorized representatives and without either adjudication of CSPA's claims or admission by Defendants of any alleged violation or other wrongdoing, have chosen to resolve in fully CSPA's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation;

WHEREAS, Defendants have provided CSPA with sworn affidavits asserting extreme financial hardship and inability to pay civil penalties, attorneys' fees, costs or expenses;

WHEREAS, the SETTLING PARTIES have agreed that, due to this extreme hardship and inability to contribute financially, Defendants' extremely limited financial resources should be used to protect water quality by ensuring that best management practices at the Facility are at all times compliant with the General Permit and the Clean Water Act; and,

WHEREAS, the SETTLING PARTIES have agreed that it is in their mutual interest to enter into this AGREEMENT setting forth the terms and conditions appropriate to resolving CSPA's allegations set forth in the 60-Day Notice Letter and Complaint.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the SETTLING PARTIES hereby agree as follows:

EFFECTIVE DATE

1.  The term "Effective Date," as used in this AGREEMENT, shall mean the last date on which the signature of a party to this AGREEMENT is executed.

## COMMITMENTS OF CSPA

2. **Stipulation to Dismiss Without Prejudice and [Proposed] Order.** Within ten (10) calendar days of the expiration of the Agencies' review period specified in Paragraph 10 below, CSPA shall file a Stipulation to Dismiss Without Prejudice and [Proposed] Order thereon pursuant to Federal Rule of Civil Procedure 41(a)(1)(A) with the United States District Court for the Eastern District of California ("District Court"), with this AGREEMENT attached as Exhibit A thereto, specifying that CSPA is dismissing with prejudice all claims in CSPA's Complaint. Consistent with Paragraph 18 herein, the Stipulation to Dismiss Without Prejudice and [Proposed] Order shall state that the District Court will retain jurisdiction through September 30, 2009 for purposes of resolving any disputes between the SETTLING PARTIES with respect to any provision of this AGREEMENT. If the District Court chooses not to enter the Order, this AGREEMENT shall be null and void upon the proper Notice by any Settling Party.

## COMMITMENTS OF DEFENDANTS

A. **Compliance Measures.**

3. **Compliance with Best Available Technology and Best Conventional Pollutant Control Technology.** Within 60 days of the Effective Date, Defendants agree to reduce or prevent pollutants associated with industrial activity in storm water discharges and authorized non-storm water discharges through implementation of BMPs that constitute the Best Available Technology for toxic and and non-conventional pollutants and the Best Conventional Pollutant Control Technology for conventional pollutants as defined in the Industrial Permit. Best Available Technology and Best Conventional Pollutant Control Technology are defined in the Industrial Permit and are commonly referred to as BAT/BCT. Within 60 days of the Effective Date, Defendants shall, if they have not already done so, further develop and implement a SWPPP that

complies with all requirements of the Industrial Permit and that includes all BMPs that achieve BAT/BCT. Within 60 days of the Effective Date, Defendants shall also revise their SWPPP as described herein to include any new BMPs such as the berms described herein. Defendants shall evaluate the effectiveness of their BMPs by comparing analytical results of storm water samples with the "Benchmark Levels" identified in Table 1 attached hereto as Exhibit B and incorporated herein by reference. Defendants agree to comply with the action plan requirements of paragraph 12.

    4.    <u>BMPs Designed to Make Progress Towards Meeting Applicable Water Quality Standards.</u> Receiving Water Limitation C(2) in the Industrial Permit requires that the Facility "not cause or contribute to the exceedance of an applicable water quality limit." Defendants are required and agree to make significant progress towards meeting applicable water quality standards as required by the Water Board, Industrial Permit and the Water Quality Control Plan ("Basin Plan"). Defendants' BMPS shall include, but not be limited to the following:

    a.    <u>Protect all drop inlets.</u> Defendants shall:

    (1) install and maintain straw waddles around each drop inlet at the Facility. Straw waddles shall be maintained in good condition and checked at least monthly during the Wet Season (Oct. 1 – May 31) and replaced as necessary.

    (2) install and maintain sock filters at each drop inlet; and

    (3) cover all drop inlets during the Dry Season (June 1 – Sept. 30) to prevent an accumulation of materials. Defendants may uncover inlets as necessary to accommodate for unseasonable rains or safety concerns.

    b.    <u>Sweeping program.</u> Defendants will sweep all paved portions of the Facility exposed to rainfall on a daily basis. Sediment accumulated from sweeping shall be disposed of to ensure that it is not discharged into the Facility's storm water conveyance system.

    d.    <u>Cover pollutant sources.</u> Defendants will cover all pollutant sources to the fullest extent possible.

[PROPOSED] CONSENT AGREEMENT      5      Case No. 2:07-cv-00965-FCD-GGH

        (1)    Defendants shall ensure that all oils, fuels, and other fluids from vehicles are drained on paved surfaces and under cover. Defendants shall store vehicle fluids in covered containers with secondary containment to prevent spills or exposure to rainfall.

        (2)    Defendants shall ensure that all car batteries shall be stored under cover and disposed of according to law.

        (3)    When ever possible, Defendants will tarp or otherwise cover vehicle parts that may leak or otherwise discharge fluid pollutants into storm water.

    e.    <u>Reduce and Protect all Discharge Points.</u> Defendant will identify all points of discharge for storm water from the Facility in its SWPPP and implement adequate BMPs for each discharge point.

5.    <u>Non-Storm Water Discharges</u>. Within 60 days of the Effective Date, Defendants shall develop and implement BMPs at the Facility to eliminate all non-storm water discharges. The BMPs shall be incorporated into the Facility's SWPPP as set forth below in paragraph 8.

6.    <u>BMP Maintenance</u>. Defendants shall inspect all BMPs at the Facility prior to each reasonably anticipated rain event occurring during business hours, daily during periods of continuing rainfall, within 24 hours after rainfall ceases, and monthly during the dry season (defined as June 1 – September 30), to ensure proper implementation and effectiveness of BMPs. Any BMP that is temporarily altered shall be restored immediately upon cessation of the operation or by the close of business, except that where rain has been predicted within 24 hours, the restoration shall occur prior to the rain event forecast for that day. Defendants shall generate a report for each inspection detailing the conditions observed during the inspection ("Inspection Report") to be maintained at the facility.

**B.**    **Employee Training**

7.    Within 60-days of the Effective Date, Defendants shall provide employee training for employees at the Facility as follows:

a. <u>Non-Storm Water Discharge Training.</u> Defendants shall conduct training on the Industrial Permit's prohibition of non-storm water discharges so that employees know what non-storm water discharges are and how to avoid them. Such training shall be specified in the SWPPP.

b. <u>BMP Training.</u> Defendants shall provide training to all employees responsible for BMP implementation and maintenance. Training shall be provided by a private consultant or representative of Defendants familiar with the Industrial Permit requirements and shall be repeated as necessary to ensure that all such employees are familiar with the Industrial Permit and SWPPP requirements. Defendants shall maintain training records to document compliance with this paragraph, and shall provide CSPA with a copy of these records within 14-days of receipt of a written request.

c. <u>Sampling Training.</u> Defendants shall provide training to all individuals performing sampling pursuant to the Industrial Permit at the Facility. All employees shall thereafter be trained prior to becoming responsible for conducting sampling activities. The training shall be provided by a private consultant or representative of Defendants familiar with the Industrial Permit requirements and shall be repeated as necessary to ensure Industrial Permit compliance. Defendants shall maintain training records to document compliance with this paragraph, and shall provide CSPA with a copy of these records within 14-days of receipt of a written request.

d. <u>Visual Observation Training.</u> Defendants shall provide additional training to all individuals performing visual observations pursuant to the Industrial Permit at the Facility. The training will be provided by a private consultant or representative of Defendants and shall be repeated as necessary to ensure Industrial Permit compliance. All new staff will receive this training before assuming responsibilities for implementing a SWPPP. Defendants shall maintain training records to document compliance with this paragraph, and shall provide CSPA with a copy

of these records within 14 days of a written request.

### C. Storm Water Pollution Prevention Plan

8. <u>SWPPP Revisions</u>. Within 60-days of the Effective Date, Defendants agree to revise the SWPPP currently in effect at the Facility to incorporate all storm water pollution prevention measures and other requirements set forth in this AGREEMENT and/or the Industrial Permit. Specifically, the SWPPP shall include a description of all industrial activities and corresponding potential pollution sources and, for each potential pollutant source, a description of the potential pollutants from the sources. The SWPPP shall also identify BMPs, and their implementation dates as required by the Industrial Permit and the Act. Defendants shall revise the SWPPP to incorporate additional BMPs developed pursuant to this AGREEMENT, the Industrial Permit, or as required by the Water Board.

9. <u>CSPA's review of revised SWPPP</u>. Defendants shall submit one copy of the revised SWPPP to CSPA within 10 days of completion of the revision.

    a. Within 30 days of CSPA's receipt of the revised SWPPP, CSPA shall provide Defendants with comments and suggestions, if any, concerning the revisions to the SWPPP.

    b. Within 10 days of Defendants' receipt of CSPA's comments on the revised SWPPP, Defendants will either incorporate CSPA's comments and reissue the SWPPP or they shall provide a written explanation identifying the comment not incorporated and the reasons therefore.

    c. Either party may elect to invoke the dispute resolution procedures as outlined in paragraph 21 below if a good faith attempt to resolve any dispute is unsuccessful.

### D. Sampling, Monitoring, Inspecting, & Reporting

10. **Sampling Program.** Within 60-days of the Effective Date, Defendants shall develop and implement a M&RP for the collection of storm water samples during storm events that incorporates the requirements of this AGREEMENT and the Industrial Permit for the Facility.

11. **Sample Analysis and Sample Frequency.** Beginning with the 2008/2009 wet season (wet season is defined as October 1 – May 31) and continuing each wet season for the life of this AGREEMENT, Defendants shall collect storm water samples from each discharge location at the Facility of each storm event at least two storm events per wet season occurring during business hours. Defendants shall analyze the samples for the constituents currently identified in Table 1 and the SWPPP. A California state certified laboratory shall perform all sample chemical analyses. Defendants shall select laboratories and analytical limits such that, at a minimum, the method detection limits ("MDLs") shall be below both the "Benchmark Levels" and any applicable water quality standard ("WQS"). The Benchmark Levels are set forth in Table 1 of Attachment B, attached hereto.

12. **Action Plans.** In the event that Defendants exceed a Table 1 "Benchmark Levels" or applicable water quality standards during the life of this AGREEMENT at the Facility, Defendants shall meet and confer with Plaintiff as set forth below to devise a mutually agreed upon action plan designed to prevent future exceedances ("Action Plan"). The Action Plan is to be done by July 1 following each rainy season following the Effective Date. The Settling Parties agree to comply with the dispute resolution procedures set forth in paragraph 21 below if there are any disagreements regarding the Action Plan(s).

   a. **Benchmark Levels Action Plan.** Defendants shall provide CSPA with an Action Plan by July 1 following each rainy season. The Action Plan shall include at a minimum (1) the

identification of the pollutant(s) discharged in excess of the Benchmark Levels, (2) an assessment of the source of the pollutant, (3), the identification of additional BMPs that will be implemented to achieve compliance with the Benchmark Levels set forth in Table 1, and (4) time schedules for implementation of the proposed BMPs. Defendants agree to implement all non-structural BMPs contemplated in the Action Plan within 21 days of Defendants' receipt of storm water sampling data demonstrating an exceedance of a Benchmark Level. CSPA shall have 21-days upon receipt of Defendants' Action Plan to provide Defendants with any such comments. Defendants shall have 14-days from the date CSPA comments on Defendants' Action Plan to implement any additional non-structural or structural BMPs. If any structural BMPs require any agency approval then Defendants shall contact CSPA to request an extension of the deadline to implement the structural BMPs requiring agency approval. CSPA's consent to Defendants' requested extension shall not be unreasonable withheld. In addition, the BMP(s) shall be subject to any applicable agency requirements and approval. Defendants shall notify CSPA in writing when the Action Plan has been implemented.

13. Site Visit. The SETTLING PARTIES agree that CSPA may conduct one wet weather site visit at the Facility annually for the term of this Agreement. The Site Visit shall occur during normal business hours and CSPA shall provide Defendants with at least 48-hours notice prior to the Site Visit. CSPA shall be permitted to take photographs, video recording, and/or samples of storm water. CSPA shall be allowed access to the Facility's SWPPP and monitoring records and to all monitoring reports and data for the Facility.

14. Reporting. During the life of this AGREEMENT, Defendants shall concurrently copy CSPA on all correspondences, plans, Annual Reports, monitoring data, or any document sent to the Regional Board or any regulatory or government agency or relating to any environmental

conditions at the Facility. Defendants agree to provide CSPA with copies of correspondences or any documents received from a regulatory or government agency or regarding environmental conditions at the Facility within 10 days of the Defendants receipt of such information. Additionally, Defendants shall provide CSPA with a copy of all laboratory analyses of sampling at the Facility within 10 days of Defendants' receipt of such information.

15. <u>Additional BMPs</u>. Defendants agree to implement additional feasible measures aimed at reducing pollutants in the Facility's storm water if the results of storm water samples taken by Defendants during the term of this AGREEMENT indicate that storm water discharges from the Facility exceed the Benchmark levels set forth in U.S. EPA's Multi-Sector General Permit for Storm Water Discharges Associated with Industrial Activity, 65 Fed. Reg. 64746, 64766-64767 (Oct. 30, 2000). New or revised BMPs shall be incorporated into the Facility's SWPPP within thirty (30) calendar days of implementation of the new or revised BMP.

**D.  Mitigation Payments, Fees & Costs.**

16. <u>Fees, Costs, and Expenses.</u> Based on Defendants' verified, confidential affidavit of financial duress, CSPA agrees to waive its right to seek reasonable investigative, consultant, expert and attorneys' fees and costs incurred in this matter, and Defendants agree to waive their right to seek any investigative, consultant, expert and attorneys' fees and costs incurred in this matter. If, during the term of this Agreement, CSPA discovers that Defendants misrepresented their financial status for the purposes of misleading CSPA during settlement negotiations, CSPA reserves the right to seek further civil penalties for any violations of the Clean Water Act or the General Permit occurring before the Effective Date of this AGREEMENT. The SETTLING PARTIES understand and agree that any misrepresentations as to Defendants' financial status by any Defendant during the term of this AGREEMENT shall constitute a material breach of this AGREEMENT.

17. <u>Review by Federal Agencies.</u> CSPA shall submit this AGREEMENT to the U.S. EPA ("EPA") and the U.S. Department of Justice ("DOJ") (hereinafter, the "Agencies") via certified mail, return receipt requested, within ten (10) calendar days after the Effective Date of this AGREEMENT for review consistent with 40 C.F.R. § 135.5. The Agencies' review period expires forty-five (45) calendar days after receipt of the AGREEMENT by both Agencies, as evidenced by the return receipts. In the event that the Agencies comment negatively on the provisions of this AGREEMENT, the SETTLING PARTIES agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies. If the SETTLING PARTIES are unable to resolve any issue(s) raised by the Agencies in their comments, the SETTLING PARTIES agree to expeditiously seek a settlement conference with the Court to resolve the issue(s).

### TERMINATION DATE OF AGREEMENT

18. This AGREEMENT shall terminate on September 30, 2009.

### NO ADMISSION OR FINDING

19. Neither this AGREEMENT nor any payment pursuant to the AGREEMENT shall constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule or regulation. However, this AGREEMENT and/or any payment pursuant to the AGREEMENT may constitute evidence in actions seeking compliance with this AGREEMENT.

### MUTUAL RELEASE OF LIABILITY

20. In consideration of the above, and except as otherwise provided in Paragraph 21 or otherwise in this AGREEMENT, the SETTLING PARTIES hereby forever and fully release each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all claims and demands of any kind, nature, or

description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the SETTLING PARTIES have against each other arising from CSPA's allegations and claims as set forth in the 60-Day Notice Letter and Complaint up to and including the Effective Date of this AGREEMENT.

## DISPUTE RESOLUTION PROCEDURES

21. Any disputes with respect to any of the provisions of this AGREEMENT shall be resolved through the following procedure. The SETTLING PARTIES agree to first meet and confer to resolve any dispute arising under this AGREEMENT. In the event that such disputes cannot be resolved through this meet and confer process, the SETTLING PARTIES agree to request a settlement meeting before the Court to which this matter is then assigned. In the event that the SETTLING PARTIES cannot resolve the dispute by the conclusion of the settlement meeting with the Court, the Settling Parties agree to submit the dispute via motion to the Court.

22. In resolving any dispute arising from this AGREEMENT, the Court may award relief limited to compliance orders, but shall also have discretion to award attorneys' fees and costs, subject to proof.

## BREACH OF SETTLEMENT AGREEMENT

23. <u>Impossibility of Performance.</u> Where implementation of the actions set forth in this AGREEMENT, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good faith efforts of the SETTLING PARTIES, the party who is unable to comply shall notify the other in writing within seven (7) calendar days of the date that the failure becomes apparent, and shall describe the reason for the non-performance. The SETTLING PARTIES agree to meet and confer in good faith concerning the non-performance and, where the SETTLING PARTIES concur that the non-performance was or is impossible, despite the timely good faith

efforts of one of the SETTLING PARTIES, new performance deadlines shall be established by agreement of the parties. In the event that the SETTLING PARTIES cannot timely agree, either SETTLING PARTY shall have the right to invoke the dispute resolution procedure described herein.

### GENERAL PROVISIONS

24. <u>Construction</u>. The language in all parts of this AGREEMENT shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

25. <u>Choice of Law</u>. This AGREEMENT shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

26. <u>Severability</u>. In the event that any provision, section, or sentence of this AGREEMENT is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

27. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this AGREEMENT shall be sent by regular, certified, or overnight mail as follows:

If to CSPA:

| To: | And to: |
|---|---|
| Bill Jennings, Executive Dir. | Andrew L. Packard |
| Cal. Sportfishing Protection Alliance | Law Offices of Andrew L. Packard |
| 3536 Rainier Road | 319 Pleasant Street |
| Stockton, CA 95204 | Petaluma, CA 94952 |
| Tel. (209) 464-5067 | Tel. (707) 763-7227 |

If to Defendants:

Richard L. Parks
American Auto Wreckers, Inc.
6128 Stockton Blvd.
Sacramento, CA 995824

Notifications of communications shall be deemed submitted on the date that they are postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices. In addition, the SETTLING PARTIES may agree to transmit documents electronically or by facsimile.

28. <u>Counterparts</u>. This AGREEMENT may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, .pdf, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this AGREEMENT.

29. <u>Assignment</u>. Subject only to the express restrictions contained in this AGREEMENT, all of the rights, duties and obligations contained in this AGREEMENT shall inure to the benefit of and be binding upon the SETTLING PARTIES, and their successors and assigns.

30. <u>Modification of the AGREEMENT</u>. This AGREEMENT, and any provisions herein, may not be changed, waived, discharged or terminated unless by a written instrument, signed by the SETTLING PARTIES.

31. <u>Full Settlement</u>. This AGREEMENT constitutes a full and final settlement of this matter. It is expressly understood and agreed that the AGREEMENT has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

32. <u>Integration Clause</u>. This is an integrated AGREEMENT. This AGREEMENT is intended to be a full and complete statement of the terms of the agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this AGREEMENT.

33. <u>Negotiated Agreement</u>. The SETTLING PARTIES have negotiated this AGREEMENT, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this AGREEMENT and any uncertainty and ambiguity shall not be interpreted against any one party.

34. <u>Authority</u>. The undersigned representatives for CSPA and Defendants each certify that he is fully authorized by the party whom he represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

Date: 10-9-08, 2008

AMERICAN AUTO WRECKERS AND RICHARD L. PARKS

By: Richard Parks

Date: _____, 2008

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

By: Bill Jennings
Executive Director

33. **Negotiated Agreement.** The SETTLING PARTIES have negotiated this AGREEMENT, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this AGREEMENT and any uncertainty and ambiguity shall not be interpreted against any one party.

34. **Authority.** The undersigned representatives for CSPA and Defendants each certify that he is fully authorized by the party whom he represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

Date:_____,, 2008              AMERICAN AUTO WRECKERS AND RICHARD L. PARKS

                                      By: Richard Parks

Date: 30 October, 2008                CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

                                      By: Bill Jennings
                                      Executive Director

APPROVED AS TO FORM:

Date: 10/15/0C, 2008

For DEFENDANTS
ERICKSEN, ARBUTHNOT, KILDUFF, DAY & LINDSTROM

_____
By:    Mark Tratten, Esq.

For PLAINTIFF

Date: _____, 2008

LAW OFFICE OF ANDREW L. PACKARD

_____
By:    Michael Lynes, Esq.

APPROVED AS TO FORM:

Date: _____, 2008

For DEFENDANTS
ERICKSEN, ARBUTHNOT, KILDUFF, DAY & LINDSTROM

_____
By:   Mark Tratten, Esq.

For PLAINTIFF

Date *October 10*, 2008

LAW OFFICE OF ANDREW L. PACKARD

*/s/ Michael Lynes/*

By:   Michael Lynes, Esq.

Dated: 1/6/09

IT IS SO ORDERED

*/s/*

[PROPOSED] CONSENT AGREEMENT

17

Case No. 2:07-cv-00965-FCD-GGH